IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-1963-03, PD-1964-03, PD-1965-03






BARBARA ANN DEARS, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


DALLAS COUNTY





 Keasler, J., delivered the opinion of the Court in which Meyers, Price, Womack,
Hervey, Holcomb, and Cochran, JJ., joined. Keller, P.J., filed a dissenting opinion. 
Johnson, J., concurred in the result.


O P I N I O N 



 Barbara Ann Dears entered open pleas of guilty but later bargained for a five-year
sentence in exchange for her pleas of true to the State's revocation motions. The trial judge
certified that she had no right to appeal since there were plea bargains and the Court of
Appeals dismissed the appeals. We conclude that these certifications are defective and these
cases do not fall within the rule prohibiting appeal in plea bargains. 

Procedural History

 Dears was initially indicted for a theft occurring in March 1999. She entered an open
plea of guilty. In May 1999 she was convicted, and the judge suspended imposition of
sentence and placed her on community supervision for 10 years.

 Several months later, Dears was indicted for possessing cocaine and heroin with the
intent to deliver them. In December 1999 she entered open guilty pleas in both cases. The
two possession cases inspired the State to move to revoke Dears's probation in the theft case. 
Dears pleaded true to the probation violations. 

 In January 2000 all three cases were before the court for sentencing. In the theft case,
Dears's probation was revoked and she was sentenced to 10 years in prison, with release to
shock probation for 10 years. In the cocaine case, the judge deferred adjudication of guilt
and placed Dears on 10 years' community supervision. And the judge convicted Dears in the
heroin case but suspended the sentence, placing her on 10 years' community supervision in
that case as well. Dears went to prison in the theft case but was released to shock probation
in August 2000. 

 The State filed motions to revoke probation in all three cases in February 2002. In
July 2003 Dears entered into an agreement with the State on these motions. She pleaded true
to the allegations in the motions to revoke in exchange for a five-year sentence in each case. 
 In August 2003 the court revoked community supervision in the theft and heroin cases
and entered a judgment adjudicating guilt in the cocaine case. Dears was sentenced to five
years in each case, to run concurrently.

 Dears filed notices of appeal and the judge entered certifications in each case
reflecting that these were plea bargain cases and Dears had no right to appeal.

Court of Appeals

 The notices of appeal and certifications were filed in the Court of Appeals on
September 17, 2003, and Dears filed her docketing statements two days later. On October
13, the appellate court entered an order stating that "[t]he trial court's certification of the
right to appeal reflects these are plea bargain cases and [Dears] has no right to appeal" but
the docketing statement "reflects there were no plea bargains in these cases." (1) Because of
this, the court said, it could not determine whether it had jurisdiction over the case. The
Court of Appeals ordered the district clerk to provide, within 15 days, the judgments and plea
papers in each case. (2)

 The clerk responded by filing all three records on October 21. A week later, the Court
of Appeals dismissed the appeals for want of jurisdiction based on the trial court's
certifications." (3) In a footnote, the Court of Appeals said:

 These cases do not involve the situation in which appellant entered negotiated
guilty pleas and is now being held to have no right to appeal. Although these
cases do not fall squarely within the language of rule 25.2(a)(2) regarding plea
bargains, we see no reason why appellant should not be bound by the plea
agreement she entered for punishment at the time her community supervision
was revoked in . . . [cause number] and her guilt was adjudicated in . . . [cause
number]. (4)


The court reporter's record was subsequently filed on November 4, 2003. 

 We granted Dears's petition for discretionary review which contends that the Court
of Appeals erred in dismissing these appeals for want of jurisdiction.

Analysis

Jurisdiction

 Jurisdiction concerns the power of a court to hear and determine a case. (5) Appellate
jurisdiction is invoked by giving timely and proper notice of appeal. (6) Notice is sufficient if
it shows the party's desire to appeal and complies with Art. 44.01 of the Code of Criminal
Procedure. (7)

Certification of Right to Appeal


 Effective January 2003 our rules of appellate procedure now require the trial judge
to enter a certification of the defendant's right to appeal. (8) If the appellate court determines
that the certification is defective, the clerk must notify the parties so that the defect can be
remedied. (9) If that action does not produce a valid certification, the appellate court may order
the trial judge to provide one. (10) The court of appeals must dismiss an appeal if a certification
showing that the defendant has the right to appeal is not made a part of the appellate record. (11) 
The rules do not define "defective," but many of our courts of appeals have concluded that
a certification is defective if it is contrary to the record. (12) 

 In plea bargain cases, Rule 25.2(a)(2) specifies the limits on the right to appeal and
the trial judge's duty to consider those limits in the certification. Specifically, 

 [i]n a plea bargain case - that is, a case in which defendant's plea is guilty or
nolo contendere and the punishment did not exceed the punishment
recommended by the prosecutor and agreed to by the defendant - a defendant
may appeal only:

 (A) those matters that were raised by written motion filed and ruled on before
trial, or

 (B) after getting the trial court's permission to appeal. (13)


This language incorporates former Rule 25.2(b)(3), transferring the specificity requirement
from the defendant's notice of appeal to the trial judge's certification. 

Application


 The Court of Appeals acknowledged that these cases "do not involve the situation in
which appellant entered negotiated guilty pleas and is now being held to have no right to
appeal." (14) But the appellate court concluded that, even though these cases do not "fall
squarely within the language of rule 25.2(a)(2)," Dears should nevertheless "be bound by the
plea agreement she entered for punishment at the time her community supervision was
revoked." (15)

 The Court of Appeals misapplied Rule 25.2(a)(2). The rule refers only to plea
bargains with regard to guilty pleas, not pleas of true on revocation motions. Regardless of
whether a court feels that a defendant should be "bound" by an agreement on a plea of true,
the plain language of Rule 25.2(a)(2) does not contemplate that situation. In this case, Dears
entered open pleas of guilty in all three cases. Nothing in Rule 25.2(a)(2) limits her right to
appeal.

 Nevertheless, the Court of Appeals was required to dismiss the appeal unless it
concluded that the trial court's certification was defective. Therefore, we must determine
what constitutes a "defective" certification and whether this was one.

 Webster defines "defective" as "wanting in something essential." (16) Black defines it
as "lacking in legal sufficiency." (17) Using this definition, there would be nothing "defective"
about the trial court's certification in this case - it "conforms to the form" (18) mandated by this
Court and is not lacking anything essential.

 Despite this, as mentioned, some of our lower appellate courts have concluded that
"defective" means "contrary to the record." (19) Their reasons are varied. Some courts rely on
Appellate Rules 44.3 and 44.4. (20) Rule 44.3 prohibits courts of appeals from dismissing an
appeal "for formal defects or irregularities in appellate procedure without allowing a
reasonable time to correct or amend the defects or irregularities." Additionally, Rule 44.4
prohibits dismissing an appeal if "the trial court's erroneous action . . . prevents the proper
presentation of a case to the court of appeals" and the trial court can correct the action. 
Another court of appeals (21) relies on the comment following Rule 25.2, which says that "[i]f
a sufficient notice of appeal or certification is not filed after the appellate court deals with
the defect (see Rules 34.5(c) and 37.1), preparation of an appellate record and representation
by an appointed attorney may cease." 

 We agree that Rules 44.3 and 44.4 weigh in favor of a definition of "defective" which
is broader than "lacking something essential." These rules reflect a strong interest in ensuring
that a defendant's right to appeal is not abridged due to "defects or irregularities" which can
be corrected. And Rules 37.1 and 34.5(c) provide the framework for correcting defective
certifications. To give meaning to Rules 44.3 and 44.4, a defective certification should
include a certification which is correct in form but which, when compared with the record
before the court, proves to be inaccurate. That way, a defendant such as Dears has her right
to appeal preserved.

 We also agree that the comment following Rule 25.2 provides some guidance. The
comment says that "preparation of an appellate record and representation by an appointed
attorney may cease" if a defective certification is not corrected. This indicates that the
appellate court may deal with the certification issue before the record is completed. The use
of the word "cease" implies that the record is in the process of being prepared but has not yet
been completed. But this timeline would seem to frustrate a conclusion that an appellate
court is required to compare a certification to the record to determine if it is defective. If an
appellate court can resolve defective certifications before the record is filed, it cannot
possibly compare the certification to the record to determine whether it is defective.

 We conclude that an appellate court has the ability to examine a certification for
defectiveness, and to use Rules 37.1 and 34.5(c) to obtain another certification, whenever
appropriate. Neither of those rules provide any time limitation to their use. If the court
chooses to examine a certification before the record is filed, it obviously cannot compare the
certification to the record. If the court chooses to examine a certification after the record is
filed, it has the ability to compare the certification to the record and, in that instance, a duty
to do so. 

 At the time of the appellate court's ruling in this case, it had before it the clerk's
record, which reflected that Dears had a right to appeal. Therefore, the Court of Appeals was
obligated to review that record in ascertaining whether the certifications were defective. The
certifications state that these are plea bargain cases, but the record refutes this. Based on the
record it had before it at the time of its ruling, the Court of Appeals should have concluded
that these certifications were defective and acted accordingly. (22) 

Judgment


 The Court of Appeals erred in dismissing these appeals for want of jurisdiction. We
reverse the judgment of the Court of Appeals and remand these cases to that court for
proceedings consistent with this opinion.


DATE DELIVERED: January 26, 2005

PUBLISH

1. Dears v. State, Nos. 05-03-01391/2/3-CR, slip op. at 1 (Tex. App. - Dallas, order
delivered October 13, 2003) (not designated for publication).
2. Id. at 1-2.
3. Dears v. State, Nos. 05-03-01391/2/3-CR, slip op. at 2 (Tex. App. - Dallas, opinion
delivered October 29, 2003) (not designated for publication).
4. Id. at 2 n.2.
5. Olivo v. State, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996). 
6. White v. State, 61 S.W.3d 424, 428 (Tex. Crim. App. 2001).
7. Rule 25.2(c). All references to rules are to the Texas Rules of Appellate Procedure.
8. Rule 25.2(a)(2).
9. Rule 37.1.
10. Rule 34.5(c).
11. Rule 25.2(d).
12. Harris v. State, 137 S.W.3d 829, 830-31 (Tex. App. - Waco 2004, no pet.);
Hargesheimer v. State, 126 S.W.3d 658, 659-60 (Tex. App. - Amarillo 2004, pet. ref'd);
Stowe v. State, 124 S.W.3d 228, 233 (Tex. App. - El Paso 2003, no pet.); Currier v. State,
114 S.W.3d 754, 755 (Tex. App. - Houston [1st Dist.] 2003, no pet.). See also Daniels v.
State, 110 S.W.3d 174, 177 (Tex. App. - San Antonio 2003, no pet.); Teel v. State, 104
S.W.3d 266, 267 (Tex. App. - Beaumont 2003, no pet.).
13. Rule 25.2(a)(2).
14. Dears, Nos. 05-03-01391/2/3-CR, (Tex. App. - Dallas, opinion delivered October
29, 2003), slip op. at 2.
15. Id.
16. Webster's Third New International Dictionary 591 (1966).
17. Black's Law Dictionary 342 (7
th ed. 2000).
18. See Daniels, 110 S.W.3d at 177.
19. Id.; Harris, 137 S.W.3d at 830-31; Hargesheimer, 126 S.W.3d at 659-60; Stowe,
124 S.W.3d at 233; Currier, 114 S.W.3d at 755; Teel, 104 S.W.3d at 267.
20. Harris, 137 S.W.3d at 830-31; Stowe, 124 S.W.3d at 233.
21. Daniels, 110 S.W.3d at 177.
22. See Rule 37.1; Rule 34.5(c)(2).